UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cynthia Moore,

      Plaintiff,

v().                                                                                             Civ. No. 02-1709 (JNE/RLE)
                                                                                         ORDER

First Reliance Standard Life Insurance Company,

      Defendant.

---

Eric Beyer, Esq., Falsani, Balmer, Peterson, Quinn & Beyer, for Plaintiff Cynthia Moore.

William Davidson, Esq., Lind, Jensen, Sullivan & Peterson, P.A., for Defendant First Reliance Standard Life Insurance Company.

---

Cynthia Moore brought this action against First Reliance Standard Life Insurance Company (First Reliance) to recover long-term disability (LTD) benefits under a plan offered by her former employer, The Olsten Corporation (Olsten), pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (2000). The case is before the Court for trial on the papers. Based on the parties' trial briefs and the administrative record,[1] the Court makes the following Findings of Fact, Conclusions of Law, and Order.

**FINDINGS OF FACT**

In June 1993, Moore started working for Olsten as a Registered Nurse Case Manager. In that capacity, Moore conducted skilled nursing visits, where she supervised home health aides, provided education, and performed intravenous and oxygen therapy and wound care. For each

---

[1] At the pre-trial conference, Moore moved to supplement the administrative record. Moore's motion is denied for the same reasons it was denied in the Court's December 2, 2003, Order.

1

case to which she was assigned, she was "[r]esponsible for the total management/complete coordination of services provided . . . ."

On January 1, 1994, Moore became insured for LTD benefits by First Reliance under policy number LSC 0066157 (the Plan) through Olsten. On April 19, 1995, she stopped working due to symptoms of abdominal pain, fever, and arthritis. She has not worked anywhere since that date.

Under the Plan, First Reliance agreed to pay benefits if an insured satisfies four conditions:

> We will pay a Monthly Benefit if an insured:
>
> (1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy;
>
> (2) is under the regular care of a Physician;
>
> (3) has completed the Elimination Period; and
>
> (4) submits satisfactory proof of Total Disability to us.

The Plan defines "Totally Disabled" and "Total Disability" as follows:

> "Totally Disabled" and "Total Disability" mean . . . that as a result of an Injury or Sickness:
>
> (1) during the Elimination Period and for the first 60 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;
>
> (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;

    (b)  "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and

 (2)  after a Monthly Benefit has been paid for 60 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

The Plan defines "Elimination Period" as a period of 180 consecutive days of "Total Disability," beginning on the first day of "Total Disability," for which no benefit is payable.

 In October 1995, after the expiration of the 180-day Elimination Period, First Reliance started to pay benefits to Moore. First Reliance continued to pay benefits to her until December 2000, when it determined that she was no longer totally disabled. Moore appealed the decision to terminate her benefits, and First Reliance concluded that its decision to terminate her benefits was appropriate.

 The administrative record upon which First Reliance based its decision to terminate Moore's benefits reveals that she was diagnosed with Crohn's disease in the early 1980s. Her Crohn's disease was asymptomatic until April 19, 1995, when she stopped working after she began experiencing abdominal pain, nausea, and bloody stools.

 On April 24, 1995, shortly after she stopped working, Moore reported to a hospital emergency room where Cathy Brenner, M.D., treated her for her gastrointestinal problems. Dr. Brenner initially diagnosed Moore with exacerbated Crohn's disease. After making that diagnosis, Dr. Brenner referred Moore to Steven Squillace, M.D., for further treatment.

 Moore began treating with Dr. Squillace in June 1995. Despite having conducted multiple tests on Moore over the course of more than four years and having referred her to the

3

Mayo Clinic for tests, Dr. Squillace has not been able to locate the source of Moore's gastrointestinal problems or a site of active intestinal disease.  In fact, all relevant tests indicated that Moore's Crohn's disease was not active at the time First Reliance decided to deny Moore's benefits.  Relying on Moore's reports of symptoms and complaints of pain, Dr. Squillace has diagnosed Moore with chronic persistent severe diarrhea, incontinence, irritable bowel syndrome, chronic abdominal pain, a history of Crohn's disease, and arthritis.  His records reflect that Moore gained more than twenty pounds during the course of his treatment of her, and that she refused to undergo surgery to increase her day-to-day mobility and freedom.

During the course of treating Moore, Dr. Squillace submitted several opinions to First Reliance regarding her ability to work.  In September 1995, he opined that Moore was totally disabled from her regular occupation.  Although asked, he declined to opine as to whether Moore was totally disabled from any occupation.  In December 1995, Dr. Squillace completed a Physical Capabilities Form.  In that form, he stated that:  (1) Moore could stand, walk, and drive from 1 to 3 hours each in an 8-hour day, and that she could sit from 3 to 5 hours in an 8-hour day; (2) she could use her upper extremities to perform repetitive grasping, pushing, pulling, and fine manipulation; (3) she was able to bend and reach above her shoulder frequently, and squat, climb, kneel, crawl, and use her feet occasionally; and (4) she could lift up to 10 pounds.  Dr. Squillace also expressed uncertainty as to when Moore could return to work.  In an Attending Physician's Statement dated April 1996, Dr. Squillace stated that Moore had been continuously totally disabled since April 1995, that she was still unable to work, and that the date of her return to work was uncertain.  In October 1996, Dr. Squillace completed another Attending Physician's Statement in which he stated that Moore remained totally disabled.  In May 1999, Dr. Squillace reported that Moore had been continuously totally disabled since April 1995.  Asked in March

2000 how long Moore would be continuously totally disabled, Squillace responded "Unknown." In August 2000, Dr. Squillace stated in another Physical Capacities Assessment: "None of the above [physical restrictions] apply to [Moore] as the cause of her disability is gastrointestinal in nature." Although Dr. Squillace opined in these reports that Moore is totally disabled, he has never opined that Moore is totally disabled from "any occupation."

In addition to treating with Dr. Squillace, the administrative record reveals that Moore also treated with a psychiatrist, Brian Erickson, M.D., beginning in August 1991. Dr. Erickson treated Moore for diagnoses including Major Depressive Disorder and Panic Disorder. Dr. Erickson's records indicate that, as of November 5, 1997, Moore was not severely depressed. In addition, Dr. Erickson's March 2, 2000, records reflect that Moore and her husband had dined out on multiple occasions and that she had begun to do yoga. Finally, Dr. Erickson's most recent records, dated July 7, 2000, reflect that although Moore suffered severe depression shortly before her menses, Moore reported that, in general, she was "so-so" and that she had recently taken a family vacation for a week to Mexico.

After Moore stopped working for Olsten, she applied for social security benefits. She was initially denied benefits. With the assistance of First Reliance, she obtained counsel to assist her in an appeal. In March 1997, an Administrative Law Judge (ALJ) awarded Moore social security disability benefits. The ALJ wrote:

> Although the precise diagnoses of all her physical impairments are uncertain, [Moore] does have severe genuine symptoms which prevent her from working and have not been resolved through years of treatments; thus they are considered disabling. The severity of the fatigue she suffers would limit her to sedentary work and her other symptoms would preclude her from being able to perform sustained attention, concentration, and sustained work performance.
> After reviewing the evidence the [ALJ] finds [Moore] suffers from medically determinable severe mental impairments. [Moore] suffers from affective disorders, a medically determinable mental impairment as evidenced by the depression. [Moore] does have anxiety as the predominant disturbance or

5

> anxiety experienced in the attempt to master symptoms, as evidenced by the panic and anxiety disorder.
>
> Not only do these impairments limit the ability to perform work activity, they also limit the ability to perform the functions of daily living.

The ALJ also found that Moore was severely impaired as a result of Crohn's disease, inflammatory arthritis, depression, and anxiety and that her impairments "prevent[ed] her from performing work at even the sedentary level."

As November 2000 approached, First Reliance assessed whether Moore was totally disabled from "any occupation"—the definition of total disability that would apply after she had received benefits for sixty months. On August 10, 2000, First Reliance wrote a letter to Moore informing her that it was beginning to review her eligibility for benefits beyond the sixtieth month of benefits payments and requesting information about her current medical status. In response to that letter, Moore submitted a Disability Review Questionnaire, wherein she indicated that she suffered from chronic severe diarrhea, acute abdominal pain, fatigue, low-grade fever, joint pain, chronic depression and panic attacks. In addition, she reported that she was taking, among other medications, Tylenol #4 three times per day for pain. Approximately two months later, on October 30, 2000, Moore wrote another letter to First Reliance indicating that on October 23, 2000, Dr. Squillace had reviewed her pain management plan and had determined that the Tylenol #4 was not adequately controlling her pain. As a result, he had prescribed her Methadone 10 mg, two to three times per day, depending on her pain level. She indicated that the side effects of the Methadone after six days included extreme drowsiness, dizziness, nausea, and impaired mental function.

In early December 2000, First Reliance referred Moore's file to a registered nurse. After reviewing Moore's medical records, the nurse, Bozena Irish, wrote:

> The above information did neither document physical nor M&N R&Ls that would preclude [Moore] from activities at any level. Although, there was documentation re Ms. Moore's chronic diarrhea, there was no weight change, nor there were [sic] lab reports that would reflect a compromised individual. Her activities, as described in her MD's notes, would support that she had capability to be outside her home environment, and therefore was able to function given access to bathroom facility when needed.

By letter of December 26, 2000, First Reliance denied Moore's claim for benefits because she was no longer totally disabled. As part of her appeal from the decision to terminate her benefits, Moore submitted to First Reliance a letter written by Dr. Squillace in April 2001. The letter states in part:

> Moore has been under my care for several years for evaluation and treatment of chronic, persistent, severe diarrhea and abdominal pain. I have completed an extensive evaluation for her symptoms and have referred her to Mayo Clinic. She is currently on an aggressive treatment regimen for her debilitating symptoms. Unfortunately, she continues to experience a debilitating problem of diarrhea, urgency, and abdominal pain.
>
> Upon careful review of my notes in the patient's chart, it clearly documents the degree of difficulty which [Moore] has in regards to her symptoms on a day-to-day basis. The unpredictability of her symptoms, along with the severity of her pain, has resulted in her being unable to seek employment at her profession as a nurse. It is my opinion that she is unable to seek gainful employment as a nurse at this time.

Moore also submitted to First Reliance a letter written by Dr. Erickson in April 2001. The letter provides in part:

> It is my opinion [Moore] continues to suffer significantly with depression and anxiety. I have made medication changes to try to improve her functioning without significant benefit. She continues to be significantly impaired with her frequent bowel movements due to her irritable bowel syndrome. Dr. Squillace . . . has been working with her closely in that regard.
>
> I do not believe she would be able to manage competitive employment based on both her mental health conditions and her medical condition.

By letter of May 30, 2001, First Reliance notified Moore of its conclusion that it had appropriately terminated her benefits. In that letter, First Reliance indicated that a vocational

7

expert had determined, after evaluating Moore's education, training, and experience, that there were occupations she would be capable of performing with the restriction of having bathroom access for frequent breaks. Among other things, the vocational expert opined that Moore would be able to function as a school nurse, community health supervising nurse, office nurse, psychiatric technician, group work program aide, volunteer services director, Holter scanning coordinator, quality assurance coordinator, cardiac monitor technician, morgue attendant, or nurse assistant.

## CONCLUSIONS OF LAW

A participant in an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Unless a benefit plan gives discretionary authority to the administrator or fiduciary to determine eligibility for benefits or to construe terms of the plan, a denial of benefits challenged under section 1132(a)(1)(B) is subject to de novo review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the parties agree that the denial of benefits is subject to de novo review. The Court, therefore, gives no deference to First Reliance's decision to terminate Moore's benefits. *See Davidson v. Prudential Ins. Co. of Am.*, 953 F.2d 1093, 1095 (8th Cir. 1992).

The parties dispute whether Moore was totally disabled—that is, whether she was able to perform the duties of any occupation reasonably using her education, training, or experience.[2] In

---

[2] In its trial submissions, First Reliance raised as additional bases for denying Moore's benefits her failure to satisfy the plan's requirement of regular physician care and the 24-month limit on benefits for total disability due to mental or nervous disorders. Because the Court concludes that Moore is not totally disabled from "any occupation," the Court need not reach these bases. The Court would, in any event, decline to consider them in light of the fact that First Reliance did not raise them in its December 2000 and May 2001 denial letters. *See Conley v.*

8

support of her claim that she is unable to perform the material duties of "any occupation," Moore relies on her own complaints of pain, fatigue, dizziness, nausea, and impaired mental function; the Social Security Administration's determination that she qualifies for social security benefits; and Dr. Squillace's reports.

**A.     Moore's Subjective Complaints**

The Court first considers Moore's complaint that she suffers pain, fatigue, dizziness, nausea, and impaired mental function that render her unable to work at "any occupation." The Court may not disregard Moore's complaints unless the Court finds that they are not credible. *See Collins v. Cont'l Cas. Co.*, 87 Fed. Appx. 605, 607 (8th Cir. 2004). In this case, the Court finds that they are not credible. Her complaints of debilitating pain and fatigue are inconsistent with her social activities—including exercising, dining out, and vacationing in Mexico—close to the time First Reliance terminated her benefits. Moreover, Moore herself controls the amount of narcotics she takes and, therefore, the side effects from those drugs, including dizziness, nausea, and impaired mental function. Finally, the Court notes that Moore's primary treating and prescribing physician, Dr. Squillace, has not opined that Moore is totally disabled from "any occupation" because of fatigue, dizziness, nausea, and/or impaired mental function, despite having multiple opportunities to do so. Instead, he has opined only that her gastrointestinal problems are a source of difficulty for her. Moreover, although Moore's psychiatrist, Dr. Erickson, opined in April 2001, that Moore would not be able to manage competitive employment because of her mental impairments, Moore concedes in her trial brief that "[Dr. Erickson's] treatment notes, which are essentially the foundation for any treating doctor opinion, simply cannot lead one to conclude [Moore] is disabled due to her depression." The Court

---

*Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir. 1999); *Marolt v. Alliant Techsys., Inc.*, 146 F.3d 617, 620 (8th Cir. 1998).

9

agrees. Dr. Erickson's treatment records reveal that, as of July 2000, Moore's depression and anxiety were not debilitating. For these reasons, the Court concludes that Moore is not totally disabled from "any occupation" due to pain, fatigue, dizziness, nausea, and/or impaired mental function. *Cf. Krizek v. Cigna Group Ins.*, No. 5:99 CV 1943, 2005 WL 928637, at *4-5 (N.D.N.Y. Mar. 22, 2005).

**B.     Social Security Benefits Award**

The Court next turns to the ALJ's decision to award Moore social security benefits in March 1997. A determination that a participant in an ERISA plan is entitled to disability payments under the social security regulations is admissible evidence that an insured is totally disabled within the meaning of a plan. *See Riedl v. Gen. Am. Life Ins. Co*, 248 F.3d 753, 759 n.4 (8th Cir. 2001). A social security benefits determination, however, does not require an insurer to reach the same conclusion, even when the plan's definition of disabled is similar to the definition the Social Security Administration applied. *See Farfalla v. Mut. of Omaha Ins. Co.*, 324 F.3d 971, 975 (8th Cir. 2003); *Coker v. Metro. Life. Ins. Co.*, 281 F.3d 793, 798 (8th Cir. 2002).

In this case, the ALJ's decision to award Moore social security benefits, which was made several years before First Reliance's decision to terminate her benefits, was based primarily on his determinations that Moore's mental impairments were severe and that she suffered from Crohn's disease. However, Moore's mental condition was not static. Dr. Erickson's November 1997 records—made after the ALJ awarded benefits—reflect that as of late 1997, Moore was not severely depressed. Moreover, in July 2000, Moore reported to Dr. Erickson that she was "so-so." Moore's mental condition had, in other words, improved since March 1997,[3] and there is

---

[3]     For this reason, the Court is not persuaded by Moore's argument that it would be inequitable to allow First Reliance to argue that Moore is not totally disabled in light of the fact that it assisted Moore in securing social security benefits.

nothing in Moore's treating psychiatrist's records indicating that, as of the time First Reliance terminated her benefits, her mental impairments were severe. Moreover, when First Reliance terminated Moore's benefits, comprehensive testing revealed that Moore's Crohn's disease was not active. Under these circumstances, the Court concludes that the ALJ's determination is not persuasive with respect to the issue of whether Moore was totally disabled within the meaning of the Plan when First Reliance terminated her benefits.

**C.     Dr. Squillace's Reports**

The Court next considers Dr. Squillace's reports regarding her condition. Dr. Squillace's assessments fail to satisfy Moore's burden of demonstrating that she is totally disabled from "any occupation" for two reasons. First and most significantly, Dr. Squillace has never opined that Moore is totally disabled from "any occupation," and, in fact, he declined to do so when given the opportunity. Thus, even if the Court were to assume that they are wholly credible, Dr. Squillace's assessments do not satisfy Moore's burden. Second, the Court is not convinced that Dr. Squillace's reports are wholly credible. Dr. Squillace has diagnosed Moore with chronic persistent severe diarrhea, incontinence, irritable bowel syndrome, chronic abdominal pain, a history of Crohn's disease, and arthritis. He has not been able to identify the source of Moore's gastrointestinal problems or a site of active intestinal disease through objective tests, and his gastrointestinal diagnoses therefore depend entirely on Moore's reports of her symptoms. As discussed above, however, Moore's complaints of debilitating pain are inconsistent with her social activities. Similarly, as Nurse Irish noted, that Moore gained more than twenty pounds from April 1995 to June 2000 is inconsistent with her reports of severe and chronic diarrhea,[4] as

---

[4]     Moore suggests in her briefing that Dr. Erickson attributed her weight gain to the fact that she was taking Remeron. In fact, however, the record reveals that it was Moore, not Dr. Erickson, who suggested that her weight gain was attributable to the Remeron.

11

is the fact that she refused to undergo surgery to improve her day-to-day mobility and freedom. Moore has, in other words, overstated her symptoms. Because Dr. Squillace's diagnoses depend on Moore's reported symptoms, the Court concludes that Dr. Squillace's diagnoses are similarly overstated and, consequently, do not establish that Moore is totally disabled from "any occupation."

In sum, Moore failed to establish that she is totally disabled from "any occupation." Accordingly, First Reliance properly concluded that there are some occupations for which she is both medically fit and professionally qualified.

**ORDER**

Based on the administrative record, the Findings of Fact, and Conclusions of Law, IT IS ORDERED THAT:

1. Moore's Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 19, 2005

s/ Joan N. Ericksen_____
JOAN N. ERICKSEN
United States District Judge